IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL PETERS, | CASE NO. 7:14CV00598 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| HAROLD W. CLARKE, ET AL., | By: Norman K. Moon |
| | United States District Judge |
| Defendant(s). | |

Daniel Peters, an inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.* Peters alleges that prison officials substantially burdened his Rastafarian religious exercise in group worship; deprived him without due process of a protected interest in group worship and vocational programs; and treated him differently than general population inmates with regard to these programs. Upon review of the record, I conclude that defendants' motion for summary judgment must be granted.

I. BACKGROUND

The relevant facts are undisputed. Virginia Department of Corrections ("VDOC") grooming policy, Operating Procedure ("OP") 864.1 (docket no. 21-1), establishes uniform personal grooming standards for offenders to facilitate the identification of offenders and to promote safety, security, and sanitation. Specifically, OP 864.1 requires male inmates to keep their hair one inch or shorter in thickness or depth. The policy disallows hair styles and beards that "could conceal contraband; promote identification with gangs; create a health, hygiene, or sanitation hazard; or could significantly compromise the ability to identify an offender." OP 864.1(IV)(C)(2). Styles such as braids, plaits, dreadlocks, cornrows, ponytails, buns, mohawks,

partially shaved head, designs cut into the hair, or any style that could conceal contraband are not permitted under the provisions of the OP. "Failure to comply [with OP 864.1 grooming standards] could pose a security risk, health hazard, or identification difficulties. Offenders who refuse to comply, or who chronically violate offender grooming standards, will be managed as potential risks to facility order and safety." OP 864.1(IV)(G)(4).

When any inmate in any VDOC prison facility fails to comply with the grooming standards, he receives a disciplinary charge and is housed in segregation until he complies with OP grooming standards. OP 864.1(IV)(H) Offenders do not lose earned good time for noncompliance with OP 864.1 and are not prohibited from earning good conduct time solely for refusing to comply with OP 864.1. A noncompliant inmate who remains charge-free for a required period of time while in segregation and meets certain criteria may be assigned to the 864.1 Violators Housing Unit ("VHU"), which is currently located in the C-5 pod of C Building at Wallens Ridge State Prison. *See* OP 864.1(IV)(I).

Peters asserts that the VHU is a general population pod, but this self-serving characterization is not consistent with the established VDOC security classification scheme. Under VDOC procedures available online, general population inmates receive security classification designations from 1 to 5, with 1 being minimum security and 5 being maximum security. *See* OP 830.2(IV)(A)(2).[1] This classification policy states its own objectives:

> Classification of offenders into appropriate security levels and assignment to facilities equipped to provide appropriate security enhances public, staff, and offender safety by ensuring that each offender receives the appropriate level of control and management while reducing the operating cost of the DOC by ensuring that offenders are assigned to the least restrictive security level necessary and not subjected to excessive control and management.

---

[1] *See gen.* VDOC Operating Procedure 830.2, "Security Classification Levels," http://vadoc.virginia.gov/about/procedures/documents/800/830-2.pdf (last visited August 20, 2015).

OP 830.2(IV)(A)(1). Some groups of inmates receive "Specialty Designations," however. For example, inmates in segregation are assigned Security Level S and inmates in protective custody are assigned Security Level P. *Id.* Inmates who are not compliant with the grooming policy are assigned Security Level H. *Id.*

A Security Level H inmate who is approved for and transferred to the VHU pod faces conditions and restrictions as set forth in local OP 864A (docket no. 26-12). Some stated objectives in maintaining the VHU pod are to manage safely and "distinctively" inmates who are noncompliant with the grooming standards, and to encourage grooming compliance, while also allowing such inmates participation in groups and privileges not otherwise available to them in segregation so as to improve their quality of life. OP 864A(IV)(A). VHU residents wear different colored jumpsuits to distinguish them from other Wallens Ridge inmates. VHU inmates cannot be housed with or be near non-VHU residents, with the exception of the school tutor. VHU residents have access to various educational programs, such as Anger Management, Thinking for a Change, and the Department of Correctional Education ("DCE") programming. VHU residents may hold jobs, have two-hour non-contact visits each week, and participate in re-entry services if they qualify. They may practice their religious beliefs in their cells or with other offenders in the pod and may meet with the chaplain. Since January 16, 2015, inmates in the VHU pod may also attend a group religious service on Fridays conducted in the DCE area of the prison.

Peters is a Virgin Islands prisoner in the custody of the VDOC under an inter-departmental contract between the VDOC and its counterpart in the Virgin Islands. When Peters first arrived at Wallens Ridge on April 14, 2013, officials placed him in segregation. On April 17, 2013, officials ordered Peters to comply with the grooming policy. Peters refused to comply,

3

because his Rastafarian religious beliefs prohibit him from cutting his hair. Officials charged him with a disciplinary offense (refusal to obey an order to comply with OP 864.1), placed him in pre-hearing detention, conducted a disciplinary hearing, and found him guilty of the charge. As a penalty for the offense, he received a reprimand. Because he was not in compliance with OP 864.1, he remained in segregation for security reasons. On October 1, 2013, officials placed him in the VHU pod.

In July 2014, Peters filed a request to attend existing Rastafarian group religious services,[2] as well as educational and vocational programs with general population inmates. Officials denied these requests, based on Peters' VHU status. Officials informed Peters that he was free to worship and practice his religious beliefs inside his cell or to hold a group religious service in the VHU.[3] Peters then complained that no such services were being held in the VHU and that he would be fearful that inmates of other beliefs in the VHU might be offended by in-pod services. Officials also advised Peters that he can participate in DCE programming.

Peters filed this § 1983 action in November 2014, against numerous supervisory officials at Wallens Ridge.[4] Liberally construed, Peters' complaint alleges the following claims for relief:

1. Peters has a liberty or property interest in being provided access to vocational programs while in prison and a liberty interest in participating in group religious services, and defendants deprived him of these interests without due process;

---

[2] Peters does not offer any specific information about his Rastafarian beliefs. Information online indicates: "Rastafari is an Abrahamic new religious movement that accepts Haile Selassie I, the Ethiopian emperor from 1930 to 1974 as God incarnate and the Messiah who will deliver believers to the Promised Land, identified by Rastas as Ethiopia. It has its roots in black-empowerment and back-to-Africa movements." Catherine Beyer, *Rastafari*, http://altreligion.about.com/od/alternativereligionsaz/a/rastafari.htm (last visited August 20, 2015).

[3] Peters claims that another Rastafarian inmate in the VHU, Nordel Charles, was allowed to attend the group religious service on one occasion, but was then told he could not attend any future services while he remained in the VHU. He does not dispute defendants' evidence, however, that VHU inmates are, by policy and general practice, kept separate from non-VHU inmates.

[4] The defendants are: Harold W. Clarke, Gregory Holloway, Quincy Reynolds, David Zook, Rebecca Young, Marcia Hensley, David Robinson, Brenda Ravizee, Lt. Burgin (whom Peters identified as Lt. Burgains), John Jabe, and two John Does, each identified only as "regional ombudsman." (docket no. 1-1, at 2.)

4

2. Defendants failed to allow Peters to participate in group religious services and vocational programs because of his VHU status, while providing such programs to other general population inmates, in violation of the Equal Protection Clause.[5]

3. Defendants denied Peters the opportunity to participate in separate Rastafarian group services because of his VHU status, in violation of his rights under the First Amendment and RLUIPA.[6]

4. Supervisory officials failed to correct the violations alleged in Claims 1 through 3.

Peters seeks compensatory damages, as well as declaratory and injunctive relief ordering his removal from the VDOC.

Defendants responded to Peters' complaint with a motion for summary judgment, providing additional and undisputed evidence about OP 864.1 and the VHU. Peters has responded to their motion, making the matter ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may

---

[5] Peters also mentions in his statement of facts that Virgin Islands inmates in other "general population" pods are allowed contact visits, but such visits are not allowed for him as a VHU inmate. He does not present this issue as a claim, and even if he did, for the reasons stated in the discussion of his other claims, treating VHU inmates differently than non-VHU inmates in this respect does not implicate equal protection principles.

[6] Peters does not argue that OP 864.1 or other facets of the VHU operating policy violate his rights under the Constitution or RLUIPA.

5

not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). Detailed factual allegations in a verified, *pro se* complaint may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.") (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)).

## B. No Personal Involvement

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To state a claim under this statute, a plaintiff must establish that he has been deprived of constitutional rights through the actions of a person or persons acting under color of state law. Therefore, he must affirmatively state conduct or omissions by each of the named defendants, personally, that violated his federally protected rights. *See e.g., Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).

Peters fails to state facts showing how *any* of the named defendants took any personal action that violated his rights in the manner alleged in his complaint. At the most, he alleges that he wrote an informal complaint to Warden Holloway about religious services in the VHU pod, that Lt. Burgin responded to that informal complaint, and that when Peters filed a regular

6

grievance on the same topic, Brenda Ravizee rejected it as a request for services.[7] Merely responding to an inmate's administrative remedies does not implicate any constitutionally protected right.[8] Moreover, Peters does not allege that Defendants Holloway, Clarke, Robinson, Jabe, Zook, Young, Reynolds, or Hensley were personally involved, in any way in violating his constitutional rights. Accordingly, these defendants are entitled to judgment as a matter of law. Similarly, no defendant can be held automatically liable for violations possibly committed by his or her subordinate employees; the doctrine of *respondeat superior* does not apply in § 1983 cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Peters may establish supervisory liability only if he states facts showing personal fault on the part of each defendant, either (a) based on the defendant's personal conduct, or (b) based another's conduct in execution of the defendant's policies or customs or with the defendant's tacit authorization. *See Fisher v. Washington Metropolitan Area Transit Author.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Peters makes no such showing with respect to any of the defendants he has named. Accordingly, they are entitled to judgment as a matter of law, based on Peters' failure to state any claim of personal involvement against them.[9]

---

[7] The fact that Peters' grievance was rejected as a request for services presents, as an alternative ground for dismissal of his claims, his failure to properly exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a). *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (holding that to meet exhaustion requirement of § 1997e(a), grievant must comply with all "critical procedural rules" of prison's grievance system, including filing deadlines).

[8] *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that prisoners do not have a constitutional right to participate in grievance procedures); *Brown v. Va. Dep't Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13. (W.D. Va. Jan. 9, 2009) (citing *Adams,* stating that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation").

[9] For the reasons stated here, under the *Iqbal*, *Garraghty*, and *Fisher* decisions, Peters fails to state facts concerning specific actions undertaken by his John Doe defendants in violation of his constitutional rights, as individuals or as supervisors. Accordingly, I will dismiss all claims against these defendants without prejudice as frivolous. *See* 28 U.S.C. § 1915A(b)(1) (authorizing summary dismissal of prisoner's claim seeking "redress from a governmental entity or officer or employee of a governmental entity" if court finds claim to "frivolous, malicious, or fails to state a claim upon which relief may be granted. . . .").

Moreover, as discussed below, Peters fails to present any genuine material issue of fact in dispute on which a reasonable fact finder could conclude that he has been deprived of any federally protected right related to the living conditions in the VHU of which he complains.

## C. No § 1983 Due Process Violation

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Phiphus*, 435 U.S. 247, 259 (1978).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citation omitted). The Constitution itself does not create a liberty interest for a convicted inmate to avoid transfer to any particular prison or to more restrictive confinement conditions, however. *Id.*; *see also Sandin v. Conner*, 515 U.S. 472, 480 (1995) ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed."); *Olim v. Wakinekona*, 461 U.S. 238, 246 (1983) (holding that interstate and intrastate prison transfers do not "deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself").

Thus, under *Sandin* and *Wilkinson*, to prove that Peters has a protected liberty interest related to VHU restrictions against group program participation, he must (a) "point to a [state or federal] law or policy providing him with an expectation of avoiding the conditions of his

8

confinement," and (b) "demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life," *Prieto*, 780 F.3d at 252, or "will inevitably affect the duration" of his confinement. *Sandin*, 515 U.S. at 487. "[W]hen a state policy expressly and unambiguously disclaims a particular expectation, an inmate cannot allege a liberty interest in that expectation." *Prieto*, 780 F.3d at 252.

Peters appears to argue that he has an "expectation" under Virgin Islands law, 5 V.I. Code § 4503(c),[10] of being provided access to vocational programs while in prison,[11] and an "expectation" under the First Amendment of participating in group religious services while in prison. I conclude, however, that even if an inmate may have some "expectations" arising under these provisions while assigned to the VDOC general population,[12] any such expectations are trumped by the VDOC grooming policy. OP 864.1 expressly provides that *any* inmate who fails to comply with the grooming policy will be housed in segregation until he complies. Peters readily admits that he has not complied with the hair length requirements of OP 864.1. As such,

---

[10] Section 4503(c) provides that Virgin Islands prison administrators, before transferring inmates to other states, "shall ascertain and insure the availability of educational *or* vocational programs . . . for the purpose of enabling such inmates . . . to gain marketable skills" (emphasis added).

[11] In relation to his due process claims, Peters also cites to a portion of a document titled "U.S. Virgin Islands-Virginia Inmate Contract," which provides, among other things:

> The VDOC shall provide care, incarceration and access to services to Virgin Islands Inmates on the same basis as a similarly situated inmate of the VDOC pursuant to Virginia laws. . . . The VDOC shall . . . provide programs of education, training, and treatment consistent with the same programs provided to Virginia inmates with similar needs.

(docket no. 23, at 2.) Peters appears to argue that as a third-party beneficiary of this contract, he has an enforceable right to the type of programs mentioned in it. Any such claim would arise, if at all, under state contract law, and state law claims are not independently actionable under § 1983. Because I herein conclude that defendants are entitled to summary judgment on Peters' § 1983 claims, I decline to exercise supplemental jurisdiction over any related state law claims and will dismiss them without prejudice. *See* 28 U.S.C. § 1367(c).

[12] The United States Supreme Court has made it clear that changes in prisoners' classifications or confinement conditions that trigger constitutional due process protections will be rare. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 224, 228 (1976) ("[W]e cannot agree that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause" by its own force; and whatever "expectation the prisoner may have [under state regulations to certain conditions of confinement are] too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all").

pursuant to that state policy, Peters will be managed as a potential risk to prison safety and order and will be assigned to segregation. In this status, he is segregated from inmates in other security statuses, which has the natural effect of prohibiting him from participation in group activities with such inmates. In the face of these OP 864.1 provisions, as long as Peters refuses to cut his hair, he cannot claim a state-created liberty interest in participating in all programs allowed to inmates in less-restrictive security classifications. *Prieto*, 780 F.3d at 252. Thus, his § 1983 due process claim regarding his inability to attend such group programs under his current circumstances fails on the first prong of the due process analysis.

Moreover, Peters' due process claim also fails on the atypical hardship prong of the analysis. He does not state facts demonstrating that conditions in the VHU are any more harsh or restrictive than comparative conditions in the general population. Indeed, OP 864A indicates that as a VHU inmate, Peters may earn the privileges of having a cell mate, exercising daily in the pod and the gym, having a job, purchasing a television, and eating his meals in the chow hall. Most importantly, Peters can participate in education programs while in the VHU. Since January 2015, he may also attend group religious services with other Rastafarian believers from the VHU pod. On these facts, I conclude that Peters' VHU status does not truly "deprive" him of either the ability to worship with like believers or to gain education toward having marketable skills upon his release.

Furthermore, Peters received due process. He had notice and a hearing before being placed in segregation for noncompliance with OP 864.1. He was verbally ordered to cut his hair to comply with OP 864.1 and when he did not comply with that order, he was served with notice that he was being charged with a disciplinary infraction for failing to do so. He then had a disciplinary hearing and a chance to tell his side of the story before being classified as security

level H and maintained in segregated confinement, such as the VHU. Peters does not suggest, nor do I find, any indication that these proceedings were inadequate to protect him against "mistaken or unjustified deprivation" of any liberty or property interest in meeting with non-VHU inmates. *Carey*, 435 U.S at 259.

For the stated reasons, I conclude that Peters has not presented any genuine issue of disputed fact on which he could persuade a fact finder that he has been deprived without due process of the liberty interests he asserts. Therefore, I will grant defendants' motion for summary judgment on Peters' due process claims.

### D. No Equal Protection Problem

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Courts have interpreted this clause as commanding that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). To survive summary judgment, Peters must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To make the latter showing, Peters must set forth "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003) (internal quotation marks omitted) (citation omitted). Disparate treatment of similarly situated prisoners "passes muster so long as [it] is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)). Plaintiff "must plead sufficient facts to satisfy each requirement. *Id.* at 731.

11

Peters believes that he has a constitutionally protected right to the same classes and group religious services permitted to general population inmates. He is mistaken. His equal protection claims fail on the first facet of the applicable analysis. Because Peters is not in compliance with OP 864.1 and is housed in the VHU pod, he is not similarly situated to other inmates of Rastafarian or any other religious faith, who are in compliance with OP 864.1 and are housed in the general population at Wallens Ridge. Prison officials have deemed Peters' uncut hair to be a security risk, requiring more restrictive confinement and separation from other inmates and staff. The inmates who cut their hair to comply with the prison's grooming standards do not present such a risk and may be housed in the general population setting, with more opportunities to congregate, worship, and learn with other such inmates. Because the two groups are not similarly situated, officials may lawfully treat them differently. *See Morrison*, 239 F.3d at 654.

Moreover, Peters states no facts suggesting that the VDOC's differing treatment of inmates, based on hair length, stems from any improper motive related to inmates' religion, race, or ethnic background. *Williams*, 326 F.3d at 584. On the contrary, this policy of treating differently inmates, based on the different levels of risk they present to the facility, is "reasonably related" to furthering legitimate "penological interests" in identification, safety, security, and sanitation, as OP 864.1 itself indicates. *Veney*, 293 F.3d at 732.

For the reasons stated, I conclude that Peters has not presented any disputed material fact on which he could prove that VDOC policies excluding VHU inmates from group classes with non-VHU inmates violates his equal protection rights. Accordingly, I will grant defendants' motion for summary judgment as to Peters' equal protection claims.

E. No Free Exercise or RLUIPA Claim

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I.; *Cruz v. Beto*, 405 U.S. 319, 322 (1977). To state a free exercise claim under this amendment, a plaintiff must allege facts sufficient to show (1) that he holds a sincere belief that is religious in nature, (2) that a prison regulation imposes a substantial burden on his right to free exercise of his religious belief, and (3) the regulation is not reasonably related to any legitimate penological interest. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (citing 42 U.S.C. § 2000cc-1(a)). Peters cites both of these provisions in his religious rights claims regarding access to group Rastafarian services.

To survive summary judgment on his First Amendment and RLUIPA claims, Peters must show that a VDOC policy implicated his ability to exercise a practice "sincerely based on a religious belief." *Holt v. Hobbs*, __U.S. __, 135 S. Ct. 853, 862 (2015) (RLUIPA); *O'Lone*, *supra* (First Amendment). Peters must also show that the challenged policy "substantially burdened" his religious exercise. *Id.*; *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) (First Amendment). "[A] substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.' " *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). Only if

13

Peters makes these showings must the court address the defendants' stated reasons for the challenged policy.

Peters states that his refusal to cut his hair is based on his Rastafarian beliefs. He does not, however, offer any documentation of the tenets of his Rastafarian faith regarding a regular practice of group worship or what purpose group services serve in an individual's exercise of that faith. Peters also does not explain how his own desire to meet regularly with other Rastafarians is rooted in any particular or sincere religious belief, rather than in some nonreligious pursuit, such as a desire to socialize and discuss politics or other secular ideas. Political and social gatherings among prisoners are not protected under the Free Exercise Clause or RLUIPA.

Most importantly, even if Peters could prove a sincere religious belief motivating his desire to meet with like believers, he has not established any substantial burden that VHU policy placed on his ability to exercise that religious practice. It is undisputed that from the time he entered the VHU in October 1, 2013, he was free to meet with other Rastafarian believers in the VHU pod and to worship privately in his cell. In July 2014, officials refused his request to participate in Rastafarian group services outside the VHU pod. To avoid creating security concerns, policy dictates that VHU inmates cannot be near non-VHU inmates, even for religious services. Yet, Peters retained the option to hold group religious services with other VHU Rastafarians in the pod. I do not find his vague, unexplained fears about offending non-Rastafarian inmates sufficient to show that being temporarily limited to the in-pod services option "put substantial pressure on [Peters] to modify his behavior and to violate his beliefs." *Lovelace*, 472 F.3d at 187. He offers no other evidence that his beliefs were burdened by these circumstances. Then, beginning in January 2015, officials arranged for group Rastafarian

14

services for VHU inmates outside the VHU pod.[13]  On these facts, I conclude that Peters has failed to show that officials' temporary refusal to allow VHU Rastafarians to attend group services substantially burdened his religious exercise so as to violate his rights under the First Amendment or RLUIPA.  Therefore, I will grant defendants' motion for summary judgment as to these claims.[14]

### III. CONCLUSION

For the reasons stated, I will grant defendants' motion for summary judgment.  An appropriate order will issue this day.  The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 26th day of August, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[13] Now that Peters can attend group worship services with other Rastafarian believers, defendants argue that his claims for injunctive relief are moot, a point that Peters does not dispute. *See, e.g., Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013) (finding that restoration of plaintiff's visitation privileges rendered moot his request for injunctive relief to order that those privileges be restored). In any event, the VDOC's policy to separate grooming policy violators from other inmates has been upheld against constitutional and RLUIPA challenges, based on the unique security risks presented by inmates' uncut hair and certain hairstyles, including dreadlocks. *See, e.g., McRae v. Johnson*, 261 F. App'x 554 (4th Cir. 2008) (citing *Ragland v. Angelone*, 420 F.Supp.2d 507, 512 (W.D.Va.2006) (citing other cases), *aff'd*, *Ragland v. Powell*, 193 F. App'x 218 (4th Cir. 2006) (unpublished), *cert. denied*, *Ragland v. Powell*, 127 S. Ct. 1877 (March 26, 2007).

[14] Moreover, even if Peters could show that temporary lack of access to separate group worship services substantially burdened that aspect of his religious practice, he has no claim for monetary damages under RLUIPA. It is well established that this provision neither creates a cause of action against state officials sued in their individual capacities nor authorizes damages against state officials sued in their official capacities. *See Sossamon v. Texas*, 563 U.S. 277,___, 131 S. Ct. 1651, 1658-59 (2011) (official-capacity claims); *Rendleman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (individual-capacity claims).  For different reasons, he also has no claim for monetary damages under the First Amendment. Even before he achieved access to group worship services in the VHU pod, Peters had other means of practicing his religious beliefs, such as wearing his hair uncut and worshiping in his cell, and keeping VHU inmates separate from non-VHU inmates is rationally related to legitimate penological interests in maintaining security and limiting staffing costs and efforts. *See O'Lone*, 482 U.S. at 350-52 (applying four-factor analysis of *Turner v. Safely*, 482 U.S. 78 (1987)).